UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ZENAIDA HERNANDEZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 12-11062- FDS |
| MARIA E. MONTANEZ, MARK A. VERDINI, | ) |
| JONATHAN W. THOMAS, CARLOS M. | ) |
| GODEN, JR, and JANE DOE, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL

This is a civil rights case involving the unlawful strip search of a prison visitor. Plaintiff seeks an order compelling Defendants to respond to several interrogatories and to produce numerous documents relevant to the conduct at issue in this lawsuit. Specifically, Plaintiff seeks the following: (1) answers to interrogatories requesting each Defendant's height, weight, age, educational background, and employment history; (2) an unredacted copy of the prison's shift roster from the date of the incident; (3) an unredacted copy of the strip search log that Plaintiff signed during the incident; (4) documents relating to the prisoner whom Plaintiff was visiting on the date of the incident; and (5) the documents and information that Defendants claim to have relied on as the basis for strip searching Plaintiff.

Defendants have asserted numerous boilerplate objections to providing this discovery, including that disclosure of the requested information would compromise safety and security in the prison. The parties have been unable to resolve this dispute by agreement. The discovery Plaintiff seeks is well within the broad scope of Rule 26(b)(1). Defendants have no legitimate interest in withholding the requested discovery, and certainly none that outweighs Plaintiff's strong need for it.

**BACKGROUND**

The complaint arises out of an incident on September 18, 2011, in which Defendants unlawfully strip searched Zenaida Hernandez when she sought to visit a prisoner at Souza-Baranowski Correctional Center in Shirley, Massachusetts. Ms. Hernandez was screened through a security checkpoint and allowed to visit briefly with Albert Jackson, the prisoner, in a non-contact visiting area where a glass barrier separated them. Mr. Jackson had been assaulted by other prisoners the day before, and Ms. Hernandez was shocked to see Mr. Jackson's injuries. Shortly after the visit began, Defendant corrections officers Mark Verdini, Jonathan Thomas, and Carlos Goden entered the visitor's side of the visiting area and ordered Ms. Hernandez to come with them. They took Ms. Hernandez to another room, closed the door, and told her she would not be allowed to leave until she submitted to a strip search. Later, Defendants Maria Montanez and Jane Doe[1] forced her to strip naked, remove her menstrual pad, and manipulate her naked body while they inspected her. The strip search did not uncover any contraband.

The complaint alleges that Defendants forced Ms. Hernandez to submit to a strip search without probable cause, without a warrant, and without her consent. Defendants assert that Ms. Hernandez consented to the strip search by virtue of her signing a "strip search log book." Ms. Hernandez disputes that she consented, and alleges in the alternative that any consent was coerced, and therefore invalid, because Defendants led her to believe that she would be held in the prison until she submitted to a strip search.

The complaint also alleges that, two days after the incident, Inner Perimeter Security Commander Nestor Cruz submitted a report to Deputy Superintendent Osvaldo Vidal regarding the strip search of Ms. Hernandez. According to the report, Defendant Verdini claimed to have received

---

[1] Plaintiff now knows that Jane Doe is a corrections officer named Jacqueline Balutis and will soon move to amend her complaint.

information from a confidential informant on September 16, 2011—two days before the strip

search—that Mr. Jackson would be receiving contraband from a visitor. The complaint alleges that

Defendants did not seek a warrant to conduct a strip search, even though they claim to have

received information about possible drug smuggling two days before the search, and that

Defendants did nothing to assess whether the informant was reliable and credible.

On December 17, 2012, Plaintiff served her first set of interrogatories and requests for

production of documents on Defendants. The following are the interrogatories and requests at issue

in this motion:

- Interrogatories 1, 3, and 4, requesting each Defendant's height, weight, date of birth, educational history, and employment background.[2]

- Interrogatory 15, asking each Defendant to state the basis for the decision to strip search Plaintiff, including all facts and circumstances used to support that decision.[3]

- Document Request 2, seeking shift rosters and similar documents from the date of the incident.[4]

- Document Request 6, seeking documents relating to strip searches at Souza-Baranowski Correctional Center, including the strip search log that Plaintiff signed.[5]

- Document Requests 7, 8 and 9, seeking documents relating to Mr. Jackson, including the information that he would receive contraband, his visitation history, and an altercation the day before Plaintiff's visit.[6]

Defendants served their responses on January 17, 2013. With respect to the interrogatories

seeking background information, each Defendant objected to providing his or her height, weight,

---

[2] Because of the large number of discovery requests at issue in this motion, Plaintiff does not reproduce the text of each request. Complete copies of the requests and responses are attached as exhibits to the Declaration of Drew Glassroth (Glassroth Decl.). Plaintiff's interrogatories are attached as Exhibit 1; the document requests are Exhibit 2.

[3] Glassroth Decl., Ex. 1.

[4] Glassroth Decl., Ex. 2.

[5] *Id.*

[6] *Id.*

and date of birth on the grounds that it was irrelevant, overly broad, unduly burdensome, and because disclosure of this information would "violate institutional security and Defendant's personal safety."[7] Each Defendant objected to providing his or her educational and employment background on essentially the same grounds.[8] In response to Interrogatory 15 regarding the basis for Defendants' decision to strip search Plaintiff, Defendants Verdini and Thomas both stated that the decision was based in part on "[Albert Jackson's] history and Department records concerning [Albert Jackson],"[9] but objected on CORI grounds to identifying or producing the information to which they were referring.[10]

      As to Plaintiff's document requests, Defendants produced a shift roster with the names of all corrections personnel not scheduled to work on the date of the incident, including Defendant Verdini's name, redacted,[11] asserting that the redacted information was "irrelevant and not responsive."[12] Defendants also objected to producing an unredacted copy of the strip search log book that Plaintiff signed on the date of the incident, citing the Massachusetts Fair Information Practices Act (FIPA), M.G.L. ch. 66A.[13] Defendants again cited FIPA in their objection to producing documents regarding Mr. Jackson's visitation history.[14] Defendants objected to producing documents relating to Mr. Jackson's altercation, claiming that such documents are irrelevant, overly

---

[7] Glassroth Decl., Ex. 3-6 (Defendants' responses to interrogatories), at Response No. 1.

[8] *Id.* at Responses No. 3 and 4.

[9] Glassroth Decl., Ex. 3 (Defendant Verdini's responses to interrogatories) and Ex. 4 (Defendant Thomas's responses to interrogatories), at Response No. 15. Defendants do not state Mr. Jackson's name in any of their papers, and refer to him only as "the Inmate."

[10] *Id.*

[11] *See* Glassroth Decl. at ¶ 9 and Ex. 8 (redacted shift roster).

[12] Glassroth Decl., Ex. 7, at Response No. 2.

[13] *Id.* at Response No. 5.

[14] *Id.* at Response No. 8. Defendants' also objected on CORI grounds, which is the subject of Plaintiff's Motion to Permit Access to CORI Information (filed separately).

broad, unduly burdensome, and "include[] investigatory information, dissemination of which would implicate safety and security concerns within the institution."[15] Defendants have not provided a privilege log for any of the withheld documents, nor have they identified the specific documents in question. In conferring with Plaintiff's counsel about these issues, defense counsel stated that she had not identified or reviewed all of the documents for which she was asserting a privilege.

On February 19, 2013, Plaintiff's counsel Drew Glassroth contacted defense counsel by email regarding Defendants' discovery responses. Attorney Glassroth attached a proposed protective order aimed at addressing Defendants' concerns regarding institutional security. Counsel had a long telephone conference on February 28, 2013. During that conversation, defense counsel rejected Plaintiff's proposed protective order as unacceptable. Attorney Glassroth sent a letter to defense counsel on March 4, 2013, attempting to resolve these issues. Attached to this letter was an updated proposed protective order, permitting certain highly sensitive documents to be produced under an attorneys'-eyes-only provision. Counsel conferred again by phone on March 7, 2013, and were able reach an agreement for production of certain Souza-Baranowski Correctional Center policies and procedures, but not for the other documents and information at issue in this motion. Defense counsel rejected Plaintiff's second proposed protective order but has not provided any alternative. Counsel conferred by phone again on March 14, 2013, but were unable to reach any further agreements regarding discovery. Plaintiff is filing a separate motion for a protective order.

## DISCUSSION

### I.      There Is No Basis For Withholding Defendants' Basic Background Information

Rule 26(b)(1) permits discovery "into any nonprivileged matter relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). The rule "contemplates wide-ranging discovery to the fullest possible extent." *Klonoski v. Malub*, 156 F.3d 255, 267 (1st Cir. 1998); *see also Cabana v. Forcier*, 200

---

[15] Glassroth Decl., Ex. 7, at Responses No. 8 and 9. Defendants also objected on CORI grounds.

F.R.D. 9, 17 (D. Mass. 2001) ("[T]he scope of discovery under the Federal Rules is very broad.").

Discovery "need not be admissible at the trial if the discovery appears reasonably calculated to lead

to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1); *see Oppenheimer Fund, Inc. v. Sanders*,

437 U.S. 340, 351 (1978) (relevance is "construed broadly to encompass any matter that bears on, or

that reasonably could lead to another matter that could bear on, any issue that is or may be in the

case").

Plaintiff's Interrogatories No. 1, 3, and 4 seek basic and indisputably relevant information—

each Defendant's height, weight, age, educational background, and employment background.

Plaintiff alleges that she was intimidated and coerced into signing the strip search log when three or

more corrections officers took her to a room, shut the door, and led her to believe that she would be

detained indefinitely until she submitted to a strip search. Defendants' heights, weights, and ages

bear directly on the issue of coercion. *Cf. Morelli v. Webster*, 552 F.3d 12, 16 (1st Cir. 2009) (noting

police officer's height and weight with respect to de facto arrest claim). Defendants' educational and

employment histories are similarly relevant with respect to any knowledge, training, experience, or

prior incidents of misconduct, and may be relevant for other permissible purposes under Rule

404(b) of the Federal Rules of Evidence.

This is basic information, routinely provided in civil rights cases. Judge Hillman recently

described it as "inconceivable" that a defendant in a civil rights case could "in good faith refuse to

disclose his height and weight to the plaintiff." *Cocroft v. Smith*, No. 10-CV-40257-TSH (D. Mass.

Sept. 11, 2012).[16] He described the defendant's refusal to provide basic background information in

that case as "not only inexcusable, it is borderline sanctionable." *Id.*

There is no legitimate reason for Defendants to withhold this information. Defendants offer

only boilerplate objections, asserting that providing this information would be unduly burdensome

---

[16] Glassroth Decl., Ex. 10.

or implicate institutional security and personal safety. But Defendants have offered no reasoning to support these conclusory objections, and it is hard to imagine how disclosure could realistically pose a risk to institutional security or Defendants' personal safety. *See Marti v. Baires*, 2012 WL 2029720, at *7 (E.D. Cal. June 5, 2012) ("Where the grounds cited for resisting discovery purportedly involve . . . a threat to institutional safety or security, the reliance on boilerplate objections is nothing short of perplexing."); *see also Rogers v. Giurbino*, 2012 WL 6625552, at *7 (S.D. Cal. Dec. 19, 2012) ("A conclusory objection based on institutional security . . . is insufficient."). This is particularly true here because Plaintiff is not a prisoner in Defendants' custody. Defendants should be ordered to supplement their responses to Interrogatories 1, 3, and 4 to provide the requested information.

## II.   Defendants Must Produce An Unredacted Shift Roster

In response to Document Request 2, seeking shift rosters and similar documents, Defendants produced a prison shift roster from the date of the incident, but redacted the names of all persons "who were not on duty on that day," including Defendant Verdini.[17] Defense counsel has stated that she is willing to provide a copy of this document with Defendant Verdini's name intact, but contends that the other redacted contents are irrelevant and not responsive to Plaintiff's request.

The entire document is relevant. Defendants have provided vague and imprecise answers about who made the decision to strip search Plaintiff,[18] and which superior officer actually authorized the search.[19] Information regarding who was on and off duty at the time of the incident is relevant to assessing Defendants' claims about who allegedly authorized their conduct—the claim is less credible if they identified personnel who were off duty.

---

[17] Glassroth Decl. at ¶ 9 and Ex. 7 at Response No. 2. A copy of the redacted shift roster is attached as exhibit 8.

[18] *See, e.g.*, Glassroth Decl., Ex. 4 at Response No. 15 (the decision "was made by the Superintendent (or his designee, in his absence)").

[19] *See, e.g.*, Glassroth Decl., Ex. 3 at Response No. 8 ("I was notified by the Shift Commander that approval had been received").

Shift rosters are not sensitive or confidential documents, and Defendants have not asserted any privilege warranting the redactions.[20] Like the interrogatories discussed above, this type of document is basic and routinely produced in civil rights cases. Defendants should be ordered to produce the complete document without redaction.

## III.    Defendants' FIPA Objections Are Without Merit

### A.    There is no basis for redacting the strip search log book

In response to Document Requests 5 and 6, Defendants produced a redacted copy of the strip search log book that Plaintiff signed during the incident.[21] Defendants redacted all visitor names other than Plaintiff's, asserting that the names were "personal data and cannot be disseminated under the Fair Information Practices Act."[22] *See* M.G.L. ch. 66A. This is a boilerplate objection that is routinely overruled in civil rights cases. *See, e.g.*, *Notice v. DuBois*, 187 F.R.D. 19, 23 & n.5 (D. Mass. 1999); *Shea v. McGovern*, 08-12148-MLW, 2011 WL 322652, at *1 (D. Mass. Jan. 31, 2011).

Plaintiff would have had the opportunity to view the unredacted document when she signed it. She should be entitled to see a complete copy of the document that Defendants rely on in support of their claim that she consented to be strip searched. The contents of the log book are relevant because discovery of the redacted names may lead to identification of witnesses who can corroborate Plaintiff's allegations regarding coercion and intimidation, which would be admissible under Rule 404(b) of the Federal Rules of Evidence.

Defense counsel has suggested that the complete strip search log cannot be produced because this document may be exempt from disclosure under the state public records law. But this is

---

[20] Glassroth Decl., Ex. 7 at Response No. 2.

[21] Glassroth Decl., Ex. 9.

[22] Glassroth Decl., Ex. 7 at Response No. 5.

not a public records request.[23] The scope of discovery in a federal civil rights case is controlled by the federal rules, not state law. *See Scaife v. Boenne*, 191 F.R.D. 590, 595 (N.D. Ind. 2000) ("The defendants are mistaken if they believe that the federal rules governing discovery require that information be part of the public record before it is discoverable."); *Brown v. Department of Corrections*, 173 F.R.D. 262, 264 (D. Ore. 1997) (state public records law "does not limit the broad discovery authorized by Fed. R. Civ. P. 26(b)(1)."). There is no legitimate basis for redacting the strip search log, and Defendants should be ordered to produce a copy of the document without redactions.

**B.      There is no basis for withholding Albert Jackson's visitation history**

Defendants also invoke FIPA to withhold documents regarding Mr. Jackson's visitation history,[24] even though Defendants Verdini and Thomas claim that Albert Jackson's "history" was part of the basis for strip searching Plaintiff.[25] Because Defendants say they relied on these documents, they are obviously relevant. Any privacy concerns with respect to these records can be addressed through a protective order. Defendants should be ordered to produce these records.

**IV.      The Balance Of Interests Favors Disclosure Of Documents Relating To Mr. Jackson's Altercation The Day Before Plaintiff's Visit**

In Document Request No. 9, Plaintiff seeks "[a]ll documents relating to any altercation involving Albert Jackson while he has been incarcerated at Souza-Baranowski Correctional Center." Defendants object to the request as irrelevant, and argue that any responsive documents include "investigatory information, dissemination of which would implicate safety and security concerns."[26]

---

[23] In any event, Defendants are incorrect that the log book is exempt from disclosure under state law. The log book does not contain any sensitive personal information, only names and signatures; no one signing it would reasonably expect their name to remain confidential. *See Torres v. Attorney General*, 391 Mass. 1, 9 (1984) ("expectations of the data subject are relevant in determining whether disclosure of information might be an invasion of privacy" subject to FIPA protections).

[24] Glassroth Decl., Ex. 7 at Response No. 8. Defendants also cite CORI. As noted above at note 14, the CORI objection can be resolved through Plaintiff's Motion to Permit Access to CORI Information.

[25] *See* Glassroth Decl., Ex. 3 and 4 at Response No. 15.

[26] Glassroth Decl., Ex. 7 at Response No. 9.

The documents are relevant. As noted above, Defendants Verdini and Thomas claim they relied on Department of Corrections records regarding Mr. Jackson as a basis for strip searching Plaintiff. These records therefore relate directly to any legal justification for the search that Defendants may intend to argue. Additionally, Defendant Verdini claims to have received information from an anonymous or confidential source regarding Mr. Jackson's visitor the day before Mr. Jackson was assaulted in the prison. Whether the person providing this information was reliable and credible, or had any bias against Mr. Jackson or his visitors, is therefore relevant to whether Defendants had probable cause to conduct a strip search. *See U.S. v. Khounsavanh*, 113 F.3d 279, 286-287 (1st Cir. 1997)*; U.S. v. Capozzi*, 73 F. Supp. 2d 75, 79 (D. Mass. 1999) (noting that "anonymous tip . . . is generally insufficient to establish probable cause").

Defendants' objection regarding "investigatory information" and institutional safety and security is also without merit. Plaintiff assumes that Defendants reference to "investigatory information" is intended to invoke the "law enforcement investigatory privilege," *see, e.g.*, *Browning v. City of S. Bend*, 2010 WL 3894223, at *3 (N.D. Ind. Sept. 30, 2010), also called the "law enforcement privilege," *see Puerto Rico v. United States*, 490 F.3d 50, 64 (1st Cir. 2007). This is a qualified privilege designed to protect "confidential government surveillance information" and "sensitive law enforcement techniques." *Puerto Rico*, 490 F.3d at 64.

The privilege is qualified, meaning that it is "subject to balancing the . . . government's interest in preserving the confidentiality of sensitive law enforcement techniques against the requesting party's interest in disclosure." *Id.* The same balancing test applies to Defendants' reference to institutional safety and security. *See, e.g.*, *Rogers v. Giurbino*, 11-CV-560-IEG, 2012 WL 6625552, at *7 (S.D. Cal. Dec. 19, 2012). "The party claiming the privilege has the burden of establishing its existence." *Shea v. McGovern*, 2011 WL 322652, at *5 (D. Mass. Jan. 31, 2011). "[B]lanket assertions are insufficient to support the privilege." *Id.* at *6. The government "must

*specifically* describe how disclosure of the requested documents in [this] particular case . . . could be harmful." *Soto v. City of Concord*, 162 F.R.D. 603, 614 (N.D. Cal. 1995) (emphasis in original); *accord. Marti v. Baires*, 2012 WL 2029720, at *5 (E.D. Cal. June 5, 2012) ("If there exists a *legitimate* privacy interest, privilege, or threat to institutional safety and security, prudence dictates that boilerplate objections not be relied upon.") (emphasis in original). Moreover, in federal civil rights cases, "an assertion of privilege must 'overcome the fundamental importance of a law meant to insure each citizen from unconstitutional state action.'" *Williams v. City of Boston*, 213 F.R.D. 99, 102 (D. Mass. 2003) (citation omitted).

Defendants' conclusory assertions of potential harm should be disregarded. In counsel's March 7 telephone conference, defense counsel stated that she had not even seen or identified all of the documents in question and did not know what information might be contained within those documents; she nevertheless objected because the documents were of the type that contain "investigatory" information. This objection does not comport with counsel's obligations under Rule 26(g). *See generally Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354 (D. Md. 2008) (discussing attorneys' obligations under Rule 26(g), including signature certifying that to the best of the attorney's knowledge, information, and belief formed *after a reasonable inquiry*, the disclosure is complete and correct at the time made). Defendants have failed to say how disclosure of *these* documents in *this* case would impair their investigatory function or threaten the security of the institution. Moreover, Defendants cannot credibly argue that a protective order would not resolve any concerns. Plaintiff's counsel has proposed a protective order with a provision for designating documents as "attorneys' eyes only," which eliminates entirely any risks Defendants contemplate.

The material relating to Mr. Jackson's altercation is directly relevant to Defendants' stated basis for strip searching Plaintiff in this case. The Court should disregard Defendants' boilerplate objections and order production of all responsive documents.

**V.      Defendants Verdini And Thomas Should Be Ordered To Identify And Produce The Information On Which They Relied In Deciding To Strip Search Plaintiff**

In their responses to Interrogatory 15, Defendants Verdini and Thomas objected "to identifying the documents, communications, acts, and facts" regarding Albert Jackson that they claim to have relied on as a basis for strip searching Plaintiff. The only asserted objection was that disclosure would violate CORI, the Criminal Offender Record Information Act. *See* M.G.L. ch. 6, §§ 167 *et seq*. This objection is the subject of Plaintiff's Motion to Permit Access to CORI Information, which is being filed separately. Counsel appeared to reach an agreement on March 7 that such a motion would resolve all CORI issues, and thus permit production of these documents. However, when counsel conferred on March 14, defense counsel stated that Defendants were still reviewing these documents to determine whether they had other objections to producing the documents and information apart from the CORI issue. Any such objections have been waived; once access to CORI is resolved, there is no basis for Defendants to withhold any documents or information referenced in Defendant Verdini's and Thomas's answers to Interrogatory 15. To prevent any belated objections that will further delay discovery, Plaintiff requests an order compelling Defendants Verdini and Thomas to provide a supplemental answer to Interrogatory 15 identifying all "documents, communications, acts, and facts" to which they were referring, and to produce any documents to which they refer as responsive to Document Request 14.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's motion to compel and order Defendants to supplement their answers to Interrogatories 1, 3, 4, and 15 and to produce all documents responsive to Requests 2, 6, 7, 8, 9, and 14, as described above, within fourteen days of the Court's order.

RESPECTFULLY SUBMITTED,


For Plaintiff Zenaida Hernandez
By her attorneys,

/s/ Drew Glassroth
Howard Friedman, BBO #180080
David Milton, BBO #668908
Drew Glassroth, BBO #681725
**Law Offices of Howard Friedman, P.C.**
90 Canal Street, 5th Floor
Boston, MA 02114
(617) 742-4100
hfriedman@civil-rights-law.com
dmilton@civil-rights-law.com
dglassroth@civil-rights-law.com

Dated: March 20, 2013



**CERTIFICATE OF SERVICE**

I certify that on this day a true copy of the above
document was served upon the attorney of record
for each party via ECF.

Date: March 20, 2013          /s/ Drew Glassroth
                              Drew Glassroth