UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

ZENAIDA HERNANDEZ,                            No. 12-cv-11062-FDS
       Plaintiff,

v.

MARIA E. MONTANEZ, MARK A. VERDINI,
JONATHAN W. THOMAS, CARLOS M. GODEN, JR.,
AND JANE DOE,
       Defendants.

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

Plaintiff alleges that she was strip searched without her consent when she went to Souza-Baranowski Correctional Center ("SBCC") to visit an inmate ("Inmate"). Defendants are Inner Perimeter Security ("IPS") Officers Jonathan W. Thomas, Mark A. Verdini, and Carlos M. Goden, Jr., and Correction Officer Maria E. Montanez.

Defendant Verdini had received information that the Inmate was to receive a large quantity of Suboxone during his next visit by a female visitor, which was Plaintiff. As a result, Defendants Verdini, Thomas, and Goden stopped the visit between Plaintiff and the Inmate so as to question Plaintiff. Plaintiff was asked if she would consent to a strip search, and she agreed. The strip search was conducted by Defendant Montanez.

It is Defendants' position that the strip search of Plaintiff was proper. At no time was Plaintiff told that she could not leave SBCC unless she consented to the strip search.

Defendants oppose Plaintiff's motion to compel as follows.

**Interrogatory No. 1**

**Request for height, weight, and date of birth of each Defendant.**

Defendants are Correction Officers. They oppose providing their personal information concerning their exact height and weight, as this is an undue invasion of their right to privacy. Further, there is no need for this information to be provided to Plaintiff. Plaintiff claims that their height and weight is "basic and indisputably relevant information" which bears directly on the issue of "coercion." In support thereof, Plaintiff cites to Cocroft v. Smith, 10-cv-40257-TSH (2012), in which the police officer defendant, in a use of excessive force case, refused to provide his height and weight. In that case, the Court found the refusal "inexcusable" and "borderline sanctionable" as to both the defendant and his counsel. Plaintiff also cites to Morelli v. Webster, 552 F.3d 12, 16 (1st Cir. 2009), a use of excessive force/unlawful detention case, in which a defendant police officer's height and weight are discussed by the Court. In that case, the defendant police officer had deliberately positioned himself so that the plaintiff could not leave the hotel, then physically assaulted her by slamming her against the wall, telling her, "look missy, you're not going anywhere, you need to go back into the room", and then forcing her to remain in the room while he questioned her with other police officers present.

By contrast, in the case at hand, Plaintiff alleges that she "felt that she was not free to leave" because Defendant Montanez had told her that she needed to sign the strip search log book, and that if she did not sign it, she would have to wait for her attorney to arrive; and because three uniformed Correction Officers had ordered her into a room, and she was in a room with four uniformed Correction Officers with the door shut. As a result, Plaintiff claims that she "felt intimidated." Plaintiff alleges that she signed the

strip search log book because Defendants "led her to believe it was the only way for her to gain her freedom." (Compl. ¶¶20-24.)

Unlike the two cases cited by Plaintiff, the instant case is not a use of excessive force case. Plaintiff does not allege that any of Defendants engaged in any overt coercive activity such as that which is described in Morelli. No physical force of *any* kind was used by *any* Defendant at *any* time. Nor was there any physical contact with Plaintiff by the two female Correction Officers during the strip search, in which Plaintiff removed her own clothing and complied with the various requests made so that a visual inspection could be conducted. Nor did *any* Defendant at *any* time physically prevent or physically block Plaintiff so that she could not leave SBCC.

Furthermore, if Plaintiff wishes to testify at trial that she felt "coerced" by the size and age of Defendants, she can certainly do so, and the jury can judge for itself the relative sizes and ages of the parties. Accordingly, there is no justification for Plaintiff to have this personal information.

With regard to providing the dates of birth (or ages) of Defendants, as set forth above, Defendants Thomas, Verdini, and Goden are IPS Officers. As IPS Officers, they are among the most highly trained officers at SBCC. IPS Officers' duties include investigating such matters as crimes committed within the prison, gang activity, assaults on staff and other inmates, and the introduction of illegal drugs into the institution. As IPS Officers, they are, therefore, among those Correction Officers most feared by inmates, as well as those most hated by many inmates, by virtue of their job responsibilities. Thus, these Defendants are placed at a particular risk if their personal information were to be made available. For example, by simply typing the Correction

Officer's name and age, without a date of birth, into Google or any similar search engine, personal information is provided about these individuals, which in the wrong hands could implicate their personal safety and that of their loved ones.  While Plaintiff herself is not an inmate, her affiliation with this Inmate, whose activities are known to IPS, brings such information more likely to end up in the wrong hands.  Even if the Inmate himself were not to use this information, it could easily be shared with other inmates, or with any of his associates outside the prison walls.[1]

Where otherwise discoverable information would pose a threat to the safety and security of the prison or infringe upon a protected privacy interest, a need may arise for the Court to balance interests in determining whether disclosure should occur.  Marti v. Baires, 2012 WL 2029720 (E.D. Cal.) at *2 (citing, inter alia, Fed. R. Civ. P. 26(c)); Seattle Times Co. v. Rhinehart, 467 U.S. 20, 35 n.21 (1984) (privacy rights or interest implicit in broad purpose and language of Rule 26(c)); Soto v. City of Concord, 162 F.R.D. 603, 616 (N.D. Cal. 1995) (recognizing a constitutionally-based right of privacy that can be raised in discovery).  Accordingly, on safety and privacy grounds, this information should not be provided to Plaintiff.

Furthermore, Plaintiff has failed to show what need she has for the dates of birth of these Correction Officers.  Plaintiff, as the party moving to compel, bears the burden of demonstrating why the objections are not justified. This requires the moving party to

---

[1] The risks to the personal safety of law enforcement officers and their families are compelling.  One need look no further than the recent slaying of the Colorado Corrections Secretary at his home, the slaying of the District Attorney of Kaufman County, Texas and his wife at their home, the slaying of a Kaufman County Assistant District Attorney in a parking lot near the courthouse, and the Captain at Lee Correctional Institution in South Carolina who was shot six times at his home in front of his wife as a result of an inmate-ordered hit attempt because the Captain was cracking down on contraband at the prison.

inform the Court why the information sought is relevant and why the responding party's objections are not meritorious. Marti v. Baires, 2012 WL 2029720 (E.D. Cal.) at *3 (citing other cases). Plaintiff has not done so. Rather, Plaintiff merely states that the dates of birth is "basic and indisputably relevant information". Accordingly, Defendants object to providing this highly personal information, which implicates their personal safety.

**Interrogatory Nos. 3 and 4**

**Request for the educational history of each Defendant, including the dates of attendance and the degree or certificate from each school, college, or specialized course; employment history since graduating from high school including every job, the name and address of the company, the time period, and the name of the supervisor.**

Defendants object to providing specific information about their educational and employment history, because such information provides details about these Correction Officers' ages and where they live, which, as set forth above, could endanger their personal safety and that of their families. For example, it is not uncommon for a person to continue living in his/her hometown after graduating from high school, particularly if that person does not attend a four-year college. This seems to be particularly true with regard to Correction Officers, a position which does not require education beyond a high school diploma. Similarly, upon graduation from high school, it is not uncommon for an individual to work at business/es in or near that individual's hometown. Thus, Defendants object to providing such specific information, for the same reasons set forth above with regard to providing their dates of birth.

Defendants do not object to providing information as to whether they graduated from high school, what college degrees they have obtained, and what courses they have

5

taken. They also do not object to providing a generic description of their former employment, such as plumber, accountant, etc.

**Interrogatory No. 15.**

**Request for the basis for the decision to strip search Plaintiff, including every fact you or any other Correction Officer used to support that decision. Include every fact relating to your contention that the strip search was lawful or justified.**

As set forth in the interrogatories of Defendants Verdini and Thomas, and pursuant to the Department's Visiting Procedure regulation, [2] the decision to approve the strip search was made by the Superintendent or his designee, and not by them. They did state, however, that it was appropriate to request approval to strip search Plaintiff based on the fact that Defendant Verdini had received an anonymous telephone call stating that the Inmate was going to receive strips of Suboxone through a female visitor on his next visit, which was September 18, 2011, and based upon the Inmate's history and Department records concerning the Inmate. Approval was requested after Plaintiff consented to the search.

Plaintiff is seeking the Department documents referenced by Defendants Verdini and Thomas which, in their opinion, demonstrate that it was appropriate to request approval to strip search Plaintiff. Defendants had initially objected to providing these documents because they involve investigatory/intelligence materials of IPS. However, Defendants do not object to providing said documents, subject to the terms set forth in the Protective Order which was subsequently filed by Defendants in this matter.

**Document Request No. 2.**

---

[2] The Department's Visiting Procedure regulation provides, in relevant part: "Strip searches may take place only with the approval of the superintendent or a designee." 103 CMR 483.14(4)(a).

6

**Documents which identify all Correction Officers who were on duty at the time of the incident and all Correction Officers who were present during the incident.**

Plaintiff is seeking a copy of the Daily Shift Roster in which no Correction Officers' names have been redacted. A copy of the Daily Shift Roster for the date of the incident was provided to Plaintiff, with the hospital trip/details, move teams, and those Correction Officers on leave, i.e., vacation, personal, industrial accident, military leave, etc., and those on a day off redacted. Defendant Verdini's name was inadvertently redacted because he was off duty that day. As set forth in his response to interrogatories, Defendant Verdini came in on his day off for the purpose of dealing with the intelligence information he had received concerning the Inmate's visit. Defendants have offered to provide a copy with his name, and the name of the IPS Commander, who was off duty that day and who was contacted at his home, unredacted.

Plaintiff is nevertheless seeking an unredacted copy of the Daily Shift Roster, including the names of those Correction Officers who were on sick leave and out on industrial accident. This information is personal information not reasonably calculated to lead to the discovery of admissible evidence under Fed. R. Civ. P. 26. The burden is on Plaintiff to show that the invasion of these Correction Officers' privacy is warranted, Torres v. Attorney General, 391 Mass. 1, 10 (1984), and she has not done so. Plaintiff contends that the names of who was on and off duty at the time of the incident is relevant to assessing Defendants' claims about who allegedly authorized the strip search, and that the claim is less credible if they identified personnel who were off duty.

As previously discussed, as set forth in Defendant Verdini and Thomas's response to interrogatories and in the Department's Visiting Procedure regulation, the decision to strip search Plaintiff was made by the Superintendent (or his designee, in his absence).

7

Defendant Verdini was notified by the Shift Commander that approval had been received for the strip search. Defendants Verdini and Thomas do not know whether the approval came from the Superintendent or his designee.

As was explained to Plaintiff's counsel, the Daily Shift Roster contains only the names of the line officers, not the Superintendent or others in management level positions. As was also explained to Plaintiff's counsel, the decision to approve a visitor strip search is made at the management level, not at the line officer level. Thus, Plaintiff has set forth no valid reason why she needs information pertaining to Correction Officers who were off duty or out on leave. Furthermore, providing information as to who was on sick leave or out on industrial accident is an unwarranted invasion of the privacy rights of those Correction Officers. See, e.g., Report of the Attorney General to the Chairman of the Division of Industrial Accidents, Rep. A.G., Pub. Doc. No. 12 at 90-91 (1978) (disclosure of names and addresses of employees who have sought workers' compensation benefits an invasion of privacy).

Notwithstanding Plaintiff's failure to state an adequate reason for needing information pertaining to Correction Officers who were not even at the institution on the date of the incident, Defendants do not object to providing a copy of the Daily Shift Roster with the off duty Correction Officers' names unredacted, but with those out on leave redacted.

**Document Requests No. 6 and 8.**

**The visitor strip search log book and the Inmate's visitor card.**

Plaintiff was provided with a copy of the visitor strip search log book, with the names and signatures of the visitors other than Plaintiff who were strip searched,

redacted. Plaintiff was not provided with a copy of the Inmate visitor card, as it is Criminal Offender Record Information ("CORI") of the Inmate, defined by G.L. c. 6, § 167. In addition, it contains the "personal data" of the victims, as defined by G.L. c. 66A, § 1, including their addresses, dates of birth, and driver's license numbers.

Defendants offered to provide a copy of the Inmate's visitor card, with the names of the visitors unredacted and the personal information of the visitors redacted, if Plaintiff were to provide a CORI release from the Inmate. However, Plaintiff is either unwilling or unable to do so. Without the release, Defendants cannot release information pertaining to the Inmate or the names of those who visited him.

Defendants, therefore, object to providing the names and the personal information of the Inmate's other visitors. They also object to providing the names of the visitors who were strip searched at SBCC. Dissemination of this information violates these individuals' privacy rights under the Fair Information Practices Act ("FIPA"). See the Public Records Division decision regarding inmate visitor records (Oct. 3, 2001) (attached hereto at Ex. A.)

Furthermore, the expectations of the data subject are relevant in determining whether disclosure of information might be an invasion of privacy. Torres v. Attorney General, 391 Mass. 1, 9 (1984). See, e.g., Attorney General v. School Comm. of Northampton, 375 Mass. 127, 132 (1978) (disclosure of names of applicant for position of superintendent of schools might constitute an invasion of privacy as to some applicants). That these individuals were at a prison to visit a family member or loved one who is a convicted felon is a matter of a personal nature and is an association which many individuals would not want to be made known to others. Nor would many

individuals want it to be made known that they consented to a strip search so that they would be permitted to visit with said family member or loved one.

With regard to the Inmate's visitor card, Plaintiff contends that because Defendants Verdini and Thomas claim that the Inmate's history is part of the basis for the strip search of Plaintiff, she is entitled to the Inmate's visitor card. Plaintiff has jumped to an inaccurate conclusion. The Inmate's visitor card was not one of the documents Defendants Verdini and Thomas relied on when they stated that it was appropriate to request approval to strip search Plaintiff based in part on the Inmate's history and Department records concerning the Inmate. Accordingly, Plaintiff has failed to set forth any justifiable grounds for violating the visitors' privacy rights to obtain the Inmate's visitor card.

With regard to the visitor strip search log book, it contains the following entries: civilian name (name of visitor who was strip searched); civilian signature; officer name (name of the Correction Officer who conducted the strip search); officer signature; date; and time. The only information which has been redacted from the documents provided to Plaintiff is the names and signatures of the visitors (other than Plaintiff) who were strip searched.

Plaintiff contends that the names of the other visitors in the visitor strip search log are relevant because discovery of the redacted names may lead to identification of witnesses who can corroborate Plaintiff's allegations regarding coercion and intimidation. Plaintiff has failed to show how violating the privacy rights of these visitors by providing their names would lead to admissible evidence.

Defendant Montanez, who conducted the strip search of Plaintiff, is listed in the visitor strip search log book as having conducted only one other strip search.  None of the other Defendants are listed as having conducted a visitor strip search.  In addition, Defendant Montanez, as well as the other Defendants, have stated in their responses to Interrogatory No. 20 that they have never been the subject of an internal investigation, administrative action, disciplinary action, citizen's complaint, or demand letter sent pursuant to Chapter 258 of the Massachusetts General Laws.  Therefore, the discovery of the identities of other visitors who were strip searched is not reasonably calculated to lead to the discovery of admissible evidence.

**Document Request No. 9.**

**All Documents relating to any alteration involving the Inmate while incarcerated at SBCC.**

Plaintiff's request for <u>all</u> documents relating to any altercations involving the Inmate is irrelevant, overly broad, and implicates CORI of not just the Inmate, but other inmates as well.  As previously discussed, with regard to those documents concerning the Inmate that demonstrate that it was appropriate to request approval to strip search Plaintiff, Defendants do not object to providing those documents pursuant to the Protective Order filed by Defendants.  Nor do they object to providing the documents pertaining to the Inmate's altercation on the day prior to Plaintiff's visit, pursuant to the Protective Order filed by Defendants.

 Respectfully submitted,

 NANCY ANKERS WHITE
 Special Assistant Attorney General

DATED:  April 1, 2013  /s/ C. Raye Poole
C. Raye Poole
B.B.O. # 632719
Department of Correction
Legal Division
70 Franklin Street, Suite 600
Boston, MA 02110
(617) 727-3300 ext. 147
CRPoole@doc.state.ma.us

**Certificate of Service**

I, C. Raye Poole, counsel for Defendants, hereby certify that on this 1st day of April 2013, a true copy of the above was served by way of the ECF system on plaintiff's attorney, Drew Glassroth.

**/s/ C. Raye Poole**

C. Raye Poole